Good morning, ladies and gentlemen. We actually have six cases before the court this morning, two of which have been submitted on the briefs and the other four are being argued today. The first case before the court is case number 172361, In Re Detroit Athletic Company, which is an appeal from the Trademark Trial and Appeal Board. Ms. Spray, you want four minutes for a rebuttal? Yes, please. All right. You may begin. Good morning. Kathleen Spray here on behalf of Detroit Athletic Company, the appellant. Before I get into some of the specifics that I've noted for today's discussion, I'd like to step back and take a bit of a broad brushstroke, because I think that's really what's been missing from this matter at really all stages of the analysis. And to do that, I think it's important to remember that the DuPont factors are 13 non-exclusive factors, the last of which is an all-encompassing anything that is probative of use analysis for the reason that we're looking at the totality of this case. We're looking at what the consumer is experiencing in the market as to these particular marks. And it's not a bright line test. It's not a simple first word is always important, last word is always important. What we're trying to do is look at what is the consumer's experience, and is that confusing as to the source of goods. And I think one thing that's very indicative is some of the pictures that may have been glossed over along the way. And so I invite you to look at appendix page 225, which is the Registrant Detroit Athletic Club's website. There are some photos on there that really go to how the registrant is marketing itself to the consumer. They really go to the luxury private club atmosphere that is the Detroit Athletic Club and the registrant. Terms like distinction, terms like distinguished pictures of weddings and the, quite frankly, beautiful building that is housing the Detroit Athletic Club really tell the story. One of the problems I have is that it seems to me that your problem is really with the breadth of the registration that was given to the Detroit Athletic Club for its mark, that its registration claims too broad of a category of clothing. Why isn't that relevant to a cancellation proceeding, but not relevant to the kind of proceeding that we have here? Well I think, first of all, the importance of the Sears case and Inres Seidel lingerie as to the markets in which clothing travel is very important. I think the presumption that there is only one single trade channel that clothing travels in is erroneous. And I think the Trademark Trial and Appeal Board has recognized in those cases that clothing travels in many different... You're misunderstanding my question because there are two different standards to apply. One is in a cancellation proceeding where you say you gave them a registration that's too broad. And then the other is in a proceeding like this where you're seeking to register your own mark, which on its face is very close to an alternative mark, and we are stuck with the categories that were given in the registration. It's a different analysis. Yes, except that, first of all, the application is for a very limited scope of the trade channel. The application is very specific to sports team related clothing, online retail clothing. And I think also the fact that there is this potential for a broad trade channel is overshadowed by the other factors, the other 12 factors that are available to us under DuPont. The trade channel, the potential trade channel that is not being occupied in the space right now is only one small factor in the totality, again, of what the consumer is experiencing. And in the Detroit regional market where these marks are being encountered, perhaps someday under some hypothetical, the Detroit Athletic Club that has been in business for over 100 years and has never entered this channel might potentially, under this registration, engage in some sort of clothing enterprise, but the fact that the consumer is not experiencing that in the current situation overshadows that one small factor among these 13 factors in the DuPont. Have you filed a cancellation proceeding? We have not yet. Okay. We feel strongly that both of these marks are entitled to exist concurrently as they have for at least the last 16 years in the market without confusion. Okay. So going forward, I think that it is important, and again, you can weigh the photograph at appendix page 91 of the applicant's housing and their marketing of what they're putting out there to the consumer. It's very different and I think pretty clearly shows why these two marks can coexist in very different and definitely not confusing circumstances. That being said, I want to make clear that the minutiae and sort of the analysis of one word or two words is really not at the heart of this. I think that's fairly well established and the focus on cases like Palm Bay Imports on the first word is really a result of the marketing. It's not a factor of the first word. It's a result of... How can you try to use the words company versus club as a basis for differentiation when they were both disclaimed? Well, I think In Re National Data Corporation holds pretty clearly that it's inappropriate to give the presence or absence of a disclaimer legal significance because the consumer doesn't understand what is disclaimed and what is not disclaimed and what we're looking at is what does the consumer see? Is it confusing to them? And particularly in this case where the terms co and club really describe the marketing that is happening, the way in which the consumer is experiencing these marks, I think that's very important and the disclaimer is not going to impact whether there is or is not confusion because the consumer doesn't know that those terms are disclaimed. And where you have admittedly descriptive, geographically descriptive marks... The consumer also doesn't have this ready access to the pictures that you've shown us today. But they do because those pictures are available online. The picture at appendix page 225 is the homepage of the registrant's website. And so in today's digital world, it is the equivalent of the department store in Sears or in Ray Seidel lingerie. This is where the consumer is actually going to look for information on the club and on the company. This is the picture that they'll see and increasingly in this digital world, pictures are becoming more and more an indicator of what the consumer's experience is. But again, the mark that you're seeking is simply the words. You're not seeking a mark with a particular depiction. Correct. And let me clarify that when I refer to the pictures, I'm referring to them as a part of a marketing scheme on behalf of both entities that are involved here in terms of showing the consumer what they do and showing the consumer what their goods and services are and the experience of the consumer in terms of distinguishing. Is there anything in the Detroit Athletic Club registration itself that would limit it in terms of its ability to market sports team paraphernalia or to market in retail or online forums? No. They would have the potential someday if they chose to enter those kinds of arenas. However, I do think that it's pretty clear from cases that the Trademark Trial and Appeal Board have recognized themselves that clothing, general clothing, can be differentiated. It often is differentiated from things like sports teams' apparel, things like that. There are different trade channels for clothing. So if the Detroit Athletic Club someday decided to enter a market for clothing described as it is in the registration, that still doesn't overlap and encroach upon the channel that is very specific. And I think if you look to even the third-party registrations that are offered by the appellee, the team sports clothing business is very specific. All of the pages that are offered in the appellee's brief, they are all differentiated. When you see team sports clothing, it is on a separate page. It is not included in the type of general clothing that is described in the registration. Have you asked the Detroit Athletic Club if it would be willing to ask for a modification of its registration to disclaim sales of sports team clothing as opposed to sales of products with its own mark? We have not for two reasons. One, first and foremost, being that we feel that we are entitled to, as they are entitled to, exist in this market concurrently without confusion. And so there is no need to ask for that, which we have the right to have. And number two, there are practical limitations that I think are appreciated more in the Detroit area in terms of getting to the board of directors of the Detroit Athletic Club and getting this accomplished. There are practical considerations that make that very difficult. Maybe while cancellation proceeding, there might be some interest in a settlement. That's always a possibility, but we do feel very strongly that we have the right to exist in this market in this way as they do. Why did you disclaim the athletic company portion of the mark? When did we? Why? Oh, why did we? Well, it was a result of the generic nature, the descriptive nature of the word athletic. And I think, as you'll see in the Detroit Athletic Club- Were you arguing that we should give some sort of legal meaning to generic terms? I think they can have. Yes, I think they can have. What's the authority for that? Generic. I think they can. Well, a couple of things. One is the Goodyear case, which has been offered for the idea that the word company isn't important and isn't source-identifying. That's an 1888 Supreme Court case in which the Supreme Court actually held that the word company gives an indication that the parties have formed an association or a partnership to deal in goods, that there is meaning there. And I think that was also held in the Opdahl case from this court, where the court was saying that .com has some sort of commercial impression. And the court there held also that the .com is similar to the impression created by Co. for company. And that's the association of a commercial entity with a mark. So in fact, those cases do indicate that despite the disclaimer, which again the public will not have information on, those terms have meaning. And I think in terms of the marketing of these particular entities, they have very real meaning and very important meaning that is probative of what the consumers are getting from these two various entities and where these goods and services are coming from. So in this case, maybe unlike many, it's very important. It's very instructive of what the consumer experience is, and that is, after all, what we're after here. What is the consumer encountering, and is it confusing? All right. You're into your butter. You want to save the rest of it? Sure. Thank you. Good morning, and may it please the Court. I think, Your Honor, Judge O'Malley hit on the real issue here, which a lot of the things that the appellant is arguing are things that are better suited for an inter partes dispute and a cancellation proceeding, or maybe something that can be worked out amicably between Detroit Athletic Club and the appellant through a consent agreement, which we would consider in a future application. The second thing I wanted to point out is that the... What kind of consent agreement could they enter into, for instance? Can you give me an example? Yeah. I mean, a consent agreement has to be fairly specific, especially when you have two marks as close as these. It would probably have to, I think, rely upon maybe a limitation that the Detroit Athletic Club was willing to enter into about where they're selling their goods and the kind of environment that is. It would probably have to... Or the kinds of... I mean, would they be able to still sell all of their clothing on any format that they would be limited to just the club mark? As long as the clothing only limited to the club mark, that would be another thing that they might want to talk about, is whether or not they want to exclude putting Detroit professional sports team logos on their goods. That would be another thing that could be discussed. So there are really... We would take it for whatever the facts are that these two parties would work out and confusion between the registration of these two marks. Is there any evidence that the club has ever actually marketed clothing with anything other than just its own club mark? There isn't, and there isn't any need to have that. The registration is broad and allows them to market their goods bearing the club mark and any other marks they want to put on it. So there's really no requirement that you use only one mark on a particular kind of The board didn't address some of the evidence that Detroit Athletic Company presented, and how do we deal with that? I'm not sure what evidence... Well, they didn't address the online reviews or the Facebook pages. Why not, and does it matter? The online reviews, I guess what Your Honor is referring to is the ones that talk about what a great club it is and how exclusive it is. That really doesn't matter because of, as you pointed out earlier, the breadth of the registration. It has no limitations that the goods are going to be sold only within the confines of an exclusive members-only club. It's broader, and that's something that could be contested, perhaps, if they didn't sell them outside that in the cancellation. But we have to take it at face value here because of, I think it's section seven of the Lanham Act, talks about the presumptions that go along with the registration. It's given validity, the exclusive right to use the mark on the goods specified. So what they're trying to say is, but you're only using them on a subset of those goods, and that's not something that we can do in an ex parte proceeding consistent with those... What's your response to your friend's argument that really you should be doing it in an ex parte proceeding because the DuPont factors are really aimed at what the consumer's experience is? The DuPont factors are very broad, but they apply not only to ex parte proceedings, they apply to inter partes proceedings as well. And so in inter partes proceedings, for example, in opposition or cancellation, perhaps a broader number of these, particularly in cancellations that are use-based, can get into the mix. But it's very clear that when you're talking about an ex parte proceeding, anything that is less than the scope of what it covers is not permissible. Your response to Judge Rainey's question, what role do generic or highly descriptive terms play in the likelihood of confusion analysis? We have to consider them. It's not just because of the fact that they're generic, we don't consider them at all. We consider them in the context of the entire mark, and that's what the board did here. It simply said that when you have the words Detroit Athletic as your first two words in both marks, followed by a word that's been disclaimed, the word club, and then the word co doesn't have any source identifying significance, it doesn't really change the overall impression that the marks are very similar. So even if something's disclaimed, it still gets considered in the totality of the mark? Absolutely, and it was here as well. My friend talked a lot about the right to exist. This isn't a case about the right to exist. This only decides whether or not the appellant gets a registration. Registration does not have anything to do with the ability to use the mark in the marketplace, so this is not about the right of the appellant to exist, as they obviously have for the last 16 years. Do you agree with your opponent that the Goodyear case supports their position? I don't believe that it does. What it said, and particularly in the context of the record in this case, what the Goodyear court said was that words that tell you the kind of entity that a party is, co, inc, or more modern things like an LLC, doesn't really provide source identification information. It does have meaning, as counsel said, but not source identifying meaning. Those are historic identifiers for business forms. What about something more modern, like a .com or .net? That's a very different kettle of fish. I think there's a case, but I can't remember which one, in which the former Judge Rader talked about, you could probably have something like tennis.net, where the dot, the generic TLD, would have maybe some meaning in the context of the mark itself, of the words that precede it, but that's not really the case with co or inc, which is what we have here. Well, what about the fact that because it's the club, the phrase Detroit Athletics seems to be a geographical descriptor. In other words, we're in Detroit, and we're an athletic club. Whereas the Detroit Athletic co seems to be a descriptor of the sports teams whose products are relevant. Does that matter? It doesn't matter in this case, because in this case, what the record supports is that there was an initial refuser for geographic descriptiveness, and that's why they opted to go to the supplemental register. So this is not a case where I think the record supports the notion that Detroit Athletic actually refers to particular kinds of logos that are on the clothing. It really only supports the conclusion that it's a geographic descriptor, because of how the appellant handled the prosecution of this case. So you view both as geographic descriptors? Yes. It appears that they both have geographic descriptors, and that the registered mark was, I believe, registered under Section 2F for acquired distinctiveness. One more point I wanted to make to Judge Rankin. One more point I wanted to make to the question you last asked me was, you were talking about what difference does co or club make in this case. And the record in this case is that there are a number of clubs that are, in fact, incorporated. They are corporations. So that shows that the co versus club doesn't really have the source identification potential that the appellant is arguing for. So does the DuPont analysis change at all, given that we're dealing with the supplemental register here? It doesn't. It's the same analysis. Really, the only thing that is different is when you're looking at the strength of the marks, you're really kind of limited to weaker marks when you're talking about marks that are on the supplemental register. One of the concerns I had about the board's opinion is it seemed to say not just that there was no evidence of actual confusion, but it seemed to say that actual confusion was irrelevant. And I'm not quite sure how that can be when actual confusion is itself a DuPont factor. It is. Actual confusion can be relevant. For example, in a case where there is actual confusion, that can be relevant to that there is likelihood of confusion. When you're saying that there is no actual confusion, that's very difficult to show even in an inter partes case, because the test is not whether there are instances of actual confusion, but whether or not there is a likelihood of confusion. But in an ex parte case, it's even harder, because you don't even have one side of the story in front of the court. And that's why in those sorts of cases... But wait, actual confusion is always relevant to the question of likelihood of confusion, right? It is relevant, yes. But it's something that really... But do you read the board's opinion the way I do, which is to say that it's not relevant? I don't think I read it to say that it's completely irrelevant. It's of very little value. And particularly in a case like here, where there actually is no evidence, there's just counsel's argument that there's no actual confusion. There is actually no evidence, no declarations that actually speak to that. Okay. And there was one customer affidavit, but what's your response to that? The affidavit did not cover... The customer declaration talked about how he looks at the name Detroit, and he thinks that the mark means that they sell Detroit professional sports logoed clothing. That really, he didn't talk about actual confusion, or that he knows the difference between the Detroit Athletic Club and the Detroit Athletic Co. Okay. And if there are no further questions, I'd ask that the court affirm. Thank you. I'd like to pick up for a moment on that last point of actual confusion in an ex parte proceeding. The Trademark Trial and Appeal Board recognized an exception to the rule for an ex parte proceeding in In Re Association of the U.S. Army, which is found at 85 USPQ 2nd 1264. It's noted as TTAB precedent in 2007, and they recognized an exception to that rule where they said that evidence of longstanding concurrent use in the same geographic area suffices to establish under the eighth DuPont factor, which is length of time during and conditions under which there's been concurrent use without evidence of actual confusion. The absence of that evidence under also the seventh factor, which is a lack of confusion, actual confusion, is legally significant and entitled to some weight in the likelihood of confusion analysis in an ex parte case. But the problem is the burden is on you to show the absence of actual confusion. Yes. And you submitted one customer declaration that never even mentioned the Detroit Athletic Club. So how is that evidence? In addition to that one affidavit, there are, as part of the online searches, numerous reviews of both Detroit Athletic Club and Detroit Athletic Company by consumers showing a complete understanding of the goods and services that are being provided by both companies and where to go, which company to go to, which entity to go to, which club to go to, to find what they're looking for. None of those were actually instances in which both marks were put before those consumers, right? They were just talking about, I know what this company does, and I know what this company does, but not as compared to each other. Correct. But they demonstrate a consumer understanding of the difference between the two and what is being provided. I mean, if they're reviewing on the right website, it means they ultimately got to the right website. It doesn't seem to me that that necessarily means they didn't type in Detroit Athletic and click on the wrong one first and realize they were in the wrong place. I mean, that happens to me all the time when I try to Google something. I mean, wouldn't that be evidence? I think that the issue there is that we're trying to determine whether the source of goods and services is confusing. And so it's not a situation where we're typing in Detroit Athletic. It's someone who's looking for clothing and might get confused potentially, or the argument is that they are going to get confused by searching for clothing and finding these two. And I think there's evidence in the record showing that when you search Detroit Athletic Clothing, because that's the registration that we're talking about is a clothing registration, that Detroit Athletic Company comes up, Detroit Athletic Club does not. I know that there was a reference from the appellee on page 29 of his brief indicating that there was an instance of that showing up, but that's not accurate. The result that was shown on appendix page 97 is a review site. It did not take the search to the Detroit Athletic Club, nor did it take it to any clothing site at all. So again, there would be no confusion when looking at Detroit Athletic Clothing. It's very clear that the applicant comes up. The observer has to dig a little bit, and then the confusion is cleared. But just looking at the marks themselves, by your example, if you're taken to the wrong website, doesn't that indicate confusion? I mean, confusion by the observer looking at the marks as a whole. Well, I think there wasn't confusion, is the point. There wasn't an instance where a consumer looking for Detroit Athletic Clothing was taken to the wrong website. All of the results dealt with the Detroit Athletic Company. So there was no confusion. And so there is evidence in the record that there was no actual confusion over a long period of time. In the U.S. Army case, the period of time that was accepted as long enough to be probative was five years. Here we're talking about 16 years. Okay. You're out of time. Thank you. Thank you. We'd ask that the court reverse the TAB decision.